UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

LINDA CARPENTINO,                  :        CIVIL NO. 3: 01CV1663 (JGM)
                    Plaintiff,     :
                                   :
V.                                 :
                                   :
MICHAEL D'AMATO and                :
GARY DEPALMA,                      :
                    Defendants.    :        NOVEMBER 20, 2003

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT

## I.    BACKGROUND

The Plaintiff, Linda Carpentino, commenced the instant action in the United

States District Court on August 28, 2001.  The Plaintiff's Complaint named as

Defendants Officers Michael D'Amato ("D'Amato") and Gary DePalma ("DePalma")

(hereinafter collectively the "Defendants") both of whom are employed as police officers

with the Town of East Haven.  Defendants D'Amato and DePalma are being sued in

their individual capacities only.  (Pl.'s Compl., ¶ 4).

The Plaintiff, who resides at 1192 North High Street in East Haven, Connecticut,

contends that the Defendants "conducted a warrantless and unreasonable search of [her] home." (Pl.'s Compl., ¶ 1,3). She claims that on the afternoon of September 7, 2000, Defendant D'Amato "broke and entered" her residence after receiving a complaint from a motorist that a dartboard had been thrown over a guardrail in the vicinity of the her home. (Pl.'s Compl., ¶¶ 3, 7). She further alleges that Defendant D'Amato had "no reason to believe that any perpetrator of said offense was in [her] home or that any evidence thereof would be found there." (Pl.'s Compl., ¶ 7).

The plaintiff alleges that, shortly thereafter, Defendant D'Amato allegedly summoned Defendant DePalma to the Plaintiff's residence, told him "what he had done," and added that he "intended to claim falsely" that he entered the Plaintiff's house in order to investigate a possible burglary after finding an open door. (Pl.'s Compl., ¶ 8). Both Defendants then allegedly entered the Plaintiff's house again and "were in the process of thoroughly searching it when the plaintiff's two teenage daughters arrived home from school . . . " (Pl.'s Compl., ¶ 9).

After finding the Defendants in their home, the Plaintiff's daughters purportedly telephoned their mother at her nearby place of employment. After being apprised of the situation, the Plaintiff allegedly "rushed home." The Plaintiff contends that the Defendants were still in the house when     she arrived home. She claims that the

2

Defendants caused "substantial damage to the interior of the house" and that the Defendants left her residence after she ordered them to, "having seized no evidence and having made no arrests." (Pl.'s Compl., ¶ 10). It is alleged that the Defendants did not have either a search or arrest warrant which permitted their entry into the Plaintiff's home. (Pl.'s Compl., ¶ 11).[1]

The Plaintiff claims that as a result of the aforementioned conduct the Defendants violated her Fourth Amendment right to be free from warrantless and unreasonable searches and seizures. (Pl.'s Compl., ¶ 12). She also claims that the Defendants conduct was "extreme and outrageous" and was carried out with the knowledge that it would cause her to suffer economic loss and severe emotional distress. (Pl.'s Compl., ¶¶ 13, 14).

The Defendants maintain, however, that their entry into Plaintiff's house was lawful because it fell within the "exigent circumstances" exception to the warrant requirement. In addition, they contend that because the Plaintiff cannot prove that the Defendants entry into her home was sufficiently outrageous, she cannot sustain a claim for intentional infliction of emotional distress. At a minimum, because it was objectively

---

[1] For the purposes of this Motion, the Defendants concede that they did not possess a search or arrest warrant prior to entering the Plaintiff's home.

3

reasonable for the Defendants to believe that their search of the Plaintiff's home was legal under the aforementioned exception to the warrant requirement, they are entitled to immunity for their purported actions.

## II.     **LEGAL STANDARD**

Rule 56(c) of the Federal Rules of Civil Procedure requires the entry of summary judgment where the moving party "shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.C.P. 56(c).  A "genuine issue" exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor.  Nabisco v. Warner-Lambert Co., 220 F.3d 43, 45 (2d Cir. 2000).  Although all inferences must be drawn in favor of the nonmoving party, mere speculation and conjecture is insufficient to preclude the granting of the motion.  Western World Inc. Co. v. Stack Oil, 922 F.2d 118,121 (2d Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (holding that nonmoving party must do more than merely show "some metaphysical doubt" as to material facts to escape summary judgment).

While the moving party has the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence

LYNCH, TRAUB, KEEFE AND ERRANTE, P. C.  ATTORNEYS AT LAW

52 TRUMBULL STREET  P.O. BOX 1612  NEW HAVEN, CONNECTICUT 06506-1612

TELEPHONE (203) 787-0275  FACSIMILE (203) 782-0278

of a genuine issue of material fact, the non-moving party cannot rest on the pleadings,

but rather must present "specific facts showing that there is a genuine issue for trial."

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Fed.R.Civ.P. 56(e).  If the court, in

viewing all reasonable inferences in favor of the non-moving party, determines that

there is no genuine issue of material fact, then summary judgment is proper.  Celotex,

477 U.S. at 322.

III.    **ARGUMENT**

      A.    **Exigent Circumstances Justified the Defendants' Warrantless Search
of the Plaintiff's Home.**

Section 1983 exposes any person acting under color of law to liability for money

damages if he or she "subjects, or causes to be subjected, any citizen of the United

States or other person within the jurisdiction thereof to the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.  The

Fourth Amendment protects individuals against unreasonable searches and seizures.

See U.S. Const. Amend. IV.  To be reasonable under the Fourth Amendment, a search

of a home must either be conducted pursuant to a warrant or meet an exception to the

warrant requirement.  See Kyllo v. United States, 533 U.S. 27, 31 (2001).

Among the recognized exceptions to the warrant requirement is the presence of

exigent circumstances:

> The warrant requirement of the Fourth Amendment guarantees the fundamental right to be free from government intrusion into the privacy of one's home. It is well-settled, however, that the warrant requirement must yield in those situations where exigent circumstances demand that law enforcement agent's act without delay . . .

Anthony v. City of New York, 339 F.3d 129, 135 (2d Cir. 2003). The essential question in determining whether exigent circumstances justified a warrantless entry is whether law enforcement agents were confronted by an "urgent need" to render aid or take action. United States v. MacDonald, 916 F.2d 766, 769 (2d Cir. 1990). Exigent circumstances are situations where " 'real immediate and serious consequences' " will "certainly occur" if the police officer postpones action to obtain a warrant. O'Brien v. City of Grand Rapids, 23 F.3d 990, 997 (6th Cir. 1994); see also Murdock v. Stout, 54 F.3d 1437, 1441 (9th Cir. 1995) (defining exigent circumstances to exist where "necessary to prevent physical harm to [police] officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating law enforcement efforts.").

The test for determining whether a warrantless entry was justified by the presence of exigent circumstances is an objective one. United States v. Zabare,

LYNCH, TRAUB, KEEFE AND ERRANTE, P. C. ATTORNEYS AT LAW

52 TRUMBULL STREET  P.O. BOX 1612  NEW HAVEN, CONNECTICUT 06506-1612

TELEPHONE (203) 787-0275  FACSIMILE (203) 782-0278

871 F.2d 282, 291 (2d Cir. 1989); <u>see also</u> <u>United States v. Talkington</u>, 843 F.2d

1041, 1044 (7th Cir. 1988) (applying an objective standard of reasonableness in

assessing whether exigent circumstances existed); <u>United States v. Nersesian</u>,

824 F.2d 1294, 1316 (2d Cir. 1987) (noting that "the proper standard for judging

the constitutionality of a search is a totally objective one")

     In general, police have been found to be justified in entering a home, even

absent a warrant, so long as the totality of the circumstances supports the

likelihood that a burglary may be in progress. <u>United States v. Porter</u>, 2003 WL

22430189 (W.D. Va. Oct. 24, 2003) (attached as <u>Exhibit 1</u>).  For example, in

<u>Murdock v. Stout</u>, 54 F.3d 1437 (9th Cir. 1995), the court affirmed summary

judgment in favor of the city in a civil rights action brought by the occupant of a

home based on police conduct, holding that the warrantless entry into the home

was justified based on the totality of the circumstances.  The police were called

to the scene by a neighbor who reported being told that a young person was

seen running from the neighbor's home and driving away in a car. <u>Id</u>. at 1438.

When the police arrived at the scene, they noticed that the backdoor was slightly

open. <u>Id</u>. at 1439.  From the outside of the house, the officers announced their

presence but received no response. <u>Id</u>.  The officers then entered and searched

7

the house. Id.

The court held that exigent circumstances require quick action in emergency situations, and the reasonableness of the warrantless entry must be determined based upon the perspective of the police at the time of entry, which is given greater weight when the police are responding to a possible crime. Id. at 1442. The court noted that the open door, coupled with the report of suspicious activity and no response to the announcement by the police equaled sufficient probable cause. Id. In addition, the court held that only a mild exigency is necessary where entry by the police will not cause physical destruction of property. Id. The court also emphasized that the facts did not indicate that the police were simply using a burglary investigation as an avenue to search for some other evidence in the home. Id. at 1442-43; see also United States v. Johnson, 9 F.3d 506 (6th Cir. 1994)(officer's observation of broken window while investigating a purported burglary was exigent circumstance justifying warrantless entry); United States v. Porter, 2003 WL 22430189 (W.D.Va. Oct. 24, 2003)(Officer's entry into defendant's home to investigate a possible burglary did not violate his Fourth Amendment rights); State v. Carroll, 97 Md.App. 234 (1993)("an apparent housebreaking, either in progress or recently committed,

8

LYNCH, TRAUB, KEEFE AND ERRANTE, P. C. ATTORNEYS AT LAW

52 TRUMBULL STREET  P.O. BOX 1612  NEW HAVEN, CONNECTICUT 06506-1612

TELEPHONE (203) 787-0275  FACSIMILE (203) 782-0278

constitutes exigent circumstances"); In re Forfeiture of $176,598, 443 Mich. 261 (1993)(entry "at the scene of an apparent breaking and entering "necessary because the "intruders may have restrained or, worse yet, injured or killed the inhabitants"); People v. Ray, 981 P.2d 928 (1999) (Where police reasonably believe that premises have been or are being burglarized, community caretaking exception to warrant requirement allows them to enter premises to resolve the situation).

In this case, the reason Officer D'Amato responded to the Plaintiff's home in the first place was because there had been a report of suspicious activity in the area. Specifically, Officer D'Amato was advised by a motorist that as she was driving south on North High Street a dart board flew from the West side of North High Street. See Case/Incident Report (hereinafter "Report" attached as Exhibit 2).[2] Because the area where the dart board originated from was a steep, private road, with only four houses, Officer D'Amato decided to investigate the situation further. Id.; Pl.'s Dep. Tr. at 13, 20, 24. Accordingly, he instructed the motorist to follow him up the private road. Report at 1.

---

[2] The Plaintiff testified at her deposition that the dart board had been previously attached to a pole near her house. (Pl.'s Dep. Tr. at 12-13)(attached as Exhibit 3).

9

LYNCH, TRAUB, KEEFE AND ERRANTE, P. C.  ATTORNEYS AT LAW

52 TRUMBULL STREET  P.O. BOX 1612  NEW HAVEN, CONNECTICUT 06506-1612

TELEPHONE (203) 787-0275  FACSIMILE (203) 782-0278

Upon reaching the top of the road, Officer D'Amato observed a male and female

exiting the house adjacent to the Plaintiffs at 1190 North High Street. Id. While the

male identified himself and stated that he did not know anything about the dartboard,

the female refused to give her name. Id. Officer D'Amato then proceeded to the

Plaintiff's residence at 1192 North High Street where he discovered the rear sliding

glass door open approximately four inches. Id.[3] Moreover, from the exterior the house

looked as though it had been ransacked. (Pl.'s Dep. Tr. at 30).[4] Believing that the

residence had been forcibly entered and that a possible burglary was in progress or that

occupants inside the house were in danger, Officer D'Amato announced his presence

and briefly entered the Plaintiff's home. Id.; (Pl.'s Dep. Tr. at 14). He then radioed for

back up and Officer DePalma responded to the scene. Id. Both Officers then checked

the residence and found no one inside. Id.

Clearly, the totality of the circumstances in this case-suspicious activity on

a private road, individuals who refused to identify themselves, an open door, no

---

[3] The Plaintiff admitted at her deposition that she left the rear sliding glass door of her house open on the date of the incident so that her children could gain access to the house when they returned from school. (Pl.'s Dep. Tr. at 16). Moreover, the plaintiff's son, Martin Carpentino testified that the doors to the home are not regularly locked. (M. Carpentino Dep. Tr. at 16)(attached as Exhibit 4). In fact, he stated that the sliding glass door often did not shut all the way and that on some occasions "if you close [the door], it might come back open a slight bit." (M. Carpentino Dep. Tr. at 17-18).

[4] The Plaintiff acknowledged that her house was in a state of disarray on the morning of September 7, 2000. Specifically, she stated that "when you leave the house at seven in the morning with six kids getting ready to go to school and to work, yes, there is laundry and breakfast dishes here and there. I would be the first to say it is not perfect at seven in the morning when you leave the house." (Pl.'s Dep. Tr. at 30).

10

LYNCH, TRAUB, KEEFE AND ERRANTE, P. C.  ATTORNEYS AT LAW

52 TRUMBULL STREET  P.O. BOX 1612  NEW HAVEN, CONNECTICUT 06506-1612

TELEPHONE (203) 787-0275  FACSIMILE (203) 782-0278

response from residents inside the home after the Officers announced themselves, and a house which appeared from the exterior to have been ransacked—presented exigent circumstances justifying, and indeed requiring, an immediate response permitting entry into Plaintiffs' home without a warrant. See Ewolski v. City of Brunswick, 287 F.3d 492, 501, 503-05 (6th Cir. 2002). In the face of such circumstances, '[i]t would defy reason to suppose that [law enforcement officers] had to secure a warrant before investigating, leaving the putative burglars free to complete their crime unmolested." United States v. Singer, 687 F.2d 1135, 1144 (8th Cir. 1982).

Given the need for police officers to make complicated judgments in what is frequently a very short period of time, the exigent circumstances doctrine requires courts to give some deference to the decisions of trained law enforcement officers in the field and thereby avoid "'unreasonable second-guessing' of the officers' assessment of the circumstances that they faced." Figg v. Schroeder, 312 F.3d 625, 639 (4th Cir. 2002)(quoting United States v. Montoya de Hernandez, 473 U.S. 531 (1985)). In Wayne v. United States, 318 F.2d 205 (D.C.Cir. 1963), Judge Warren E. Berger (later Chief Justice of the United States Supreme Court) articulated this overarching but often overlooked

11

LYNCH, TRAUB, KEEFE AND ERRANTE, P. C.  ATTORNEYS AT LAW

52 TRUMBULL STREET  P.O. BOX 1612  NEW HAVEN, CONNECTICUT 06506-1612

TELEPHONE (203) 787-0275  FACSIMILE (203) 782-0278

fact of police life:

> a warrant is not required to break down a door, to enter a burning home, to rescue occupants or extinguish a fire, to prevent a shooting or to bring emergency aid to an injured person. The need to protect or preserve life to avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency. Fires or dead bodies are reported to police by cranks where no fires or bodies are to be found. Acting in response to reports of "dead bodies," the police may find the "bodies" to be common drunks, diabetics in shock, or distressed cardiac patients. *But the business of policeman . . . is to act, not to speculate or mediate on whether the report is correct. People could well die in emergencies if police tried to act with the calm deliberation associated with the judicial process.*

(Emphasis added).

There can be no doubt that the conduct of the officers in this instance was exactly the type of police work the community would expect, and possibly even demand. Indeed, police officers would be in dereliction of their duties had they not decided to investigate. See Murdock v. Stout, 54 F.3d 1437, 1442 (9th Cir. 1995)("[W]e are convinced that citizens in the community would have understandably viewed the officers' actions as poor police work if they had left the scene or failed to investigate further at once."). In this case, it is easy to imagine the likely community outrage had the Defendants failed to investigate and had there actually been a burglary in progress or someone inside the

residence in need of immediate assistance.

Accordingly, because there can be no genuine issue of material fact as to the Officers' conduct, summary judgment should enter in favor of the Defendants.

**B.    Since the Plaintiff Cannot Prove that the Defendants Intended to Inflict Emotional Distress or that they Engaged in Any Extreme and Outrageous Conduct, Summary Judgment Should Enter in Favor of the Defendants as to the Plaintiff's Claim for Intentional Infliction of Emotional Distress**

Summary judgment should enter in favor of the Defendants as to the Plaintiff's pendent state law claim of intentional infliction of emotional distress. If the court determines that the Defendants are entitled to summary judgment on Plaintiff's federal claims, the court should decline to exercise supplemental jurisdiction over Plaintiff's state law claim of intentional infliction of emotional distress. See <u>United Mine Workers of America v. Gibbs</u>, 383 U.S. 715, 726 (1966)("[I]f the federal claims are dismissed before trial, even though not insubstantial in the jurisdictional sense, the state claims should be dismissed as well."); <u>Lennon v. Miller</u>, 66 F.3d 416, 426 (2d Cir. 1995).

Alternatively, the Plaintiff's emotional distress claim must fail as a matter of law. The Plaintiff claims that the Defendants caused her to suffer emotional distress. (Pl.'s Compl. ¶ 13). The Defendants maintain that they are entitled to summary judgment because the Plaintiff cannot prove that the Defendants intended to inflict emotional

13

distress or that they engaged in any extreme and outrageous conduct.

In order for the plaintiff to prevail in a case for liability under . . . [the claim of intentional infliction of emotional distress], four elements must be established.  It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe . . . "  Peytan v. Ellis, 200 Conn. 243, 253 (1986).  The standard for stating such a claim is very high, requiring allegation of conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  Martin v. Citibank N.A., 762 F.2d 212, 220 (2nd Cir. 1985)(quoting Fischer v. Maloney, 43 N.Y.2d 553, 553 (1978)); DeLaurentis v. New Haven, 220 Conn. 225, 266-67 (1991).  Whether the defendants' conduct and the plaintiff's resulting distress are sufficient to satisfy either of these elements is a question, in the first instance, for the court.  Mellaly v. Eastman Kodak Co., 42 Conn.Supp. 17, 18 (1991).

In Rzayeva v. Foster, 134 F.Supp.2d 239 (D.Conn. 2001), a policeman entered the plaintiff's home at 10:00 p.m. while she was clad only in a nightgown to discuss a

14

threatening letter she had written.  A confrontation ensued that led to her arrest.  Later

she brought suit for the warrantless entry, and also sought damages for intentional

infliction of emotional distress.  The court granted summary judgment on the emotional

distress claim.  It determined that the police officer's conduct of "unlawfully entering [the

plaintiff's] apartment where he saw her in her nightgown" did not rise to the level of " '

'extreme and outrageous' conduct of a nature especially calculated to cause mental

distress of a very serious kind, which is required to sustain a claim of intentional

infliction of emotional distress." Id. at 250.

Similarly, in Silberberg v. Lynberg, 186 F.Supp.2d 157 (D.Conn. 2002), the

plaintiff had been acquitted of a drug charge and sought damages for intentional

infliction of emotional distress.  The plaintiff stated in his deposition that the possibility of

conviction was "still on my mind."  The court determined that this was not sufficient

evidence to show mental distress of a very serious kind.  Even a feeling of "great

humiliation" or "depression" is not enough. Id.  at 176.

In this case, the Plaintiff has not made the requisite showing in order to sustain a

claim for intentional infliction of emotional distress.  She testified that following the

incident she was unable to leave her house without checking all the doors and windows

that she had a general fear of trusting other people, and that she had trouble sleeping.

15

LYNCH, TRAUB, KEEFE AND ERRANTE, P. C.  ATTORNEYS AT LAW

52 TRUMBULL STREET  P.O. BOX 1612  NEW HAVEN, CONNECTICUT 06506-1612

TELEPHONE (203) 787-0275  FACSIMILE (203) 782-0278

Moreover, she claimed that when she was away from home she checked on her children frequently. [5] However stressful the Defendants entry may have been, their purpose was to investigate a potential burglary and thwart a possible crime, not to antagonize the Plaintiff. Thus, even accepting Plaintiff's version of the facts, the Defendants' conduct was not extreme or intolerable to the degree contemplated by the tort of intentional infliction of emotional distress. Therefore, based on the principles espoused in <u>Rzayeva</u> and <u>Silberberg</u>, summary judgment should enter in favor of the Defendants as a matter of law.

      **C.**    **<u>The Defendants are Entitled to Summary Judgment Pursuant to the Doctrine of Qualified Immunity Because it was Objectively Reasonable For Them to Believe That Their Actions Did Not Violate the Plaintiff's Rights.</u>**

Should the court reject the arguments set forth above, the Plaintiff's claims should be dismissed because Defendants are entitled to immunity for their alleged conduct.

Police officers are immune from liability for money damages in suits brought against them in their individual capacities if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). "Even where the plaintiff's

---

[5] Despite this claim, the Plaintiff testified that she regularly called to check on her children long before this incident took place. (Pl.'s Dep. Tr. at 24-25).

16

LYNCH, TRAUB, KEEFE AND ERRANTE, P. C.  ATTORNEYS AT LAW

52 TRUMBULL STREET  P.O. BOX 1612  NEW HAVEN, CONNECTICUT 06506-1612

TELEPHONE (203) 787-0275  FACSIMILE (203) 782-0278

federal rights and the scope of the official's permissible conduct are clearly established,

the qualified immunity defense protects a government actor if it was 'objectively

reasonable' for him to believe that his actions were lawful at the time of the challenged

act." Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995); see also Weyant v. Okst, 101

F33d 845, 857 (2d Cir. 1996). "A qualified immunity defense is established if (a) the

defendant's action did not violate clearly established law, or (b) it was objectively

reasonable for the defendant to believe that his action did not violate such law." Salim

v. Proulx, 93 F.3d 86, 89 (2d Cir. 1996).

The objective reasonableness test is met if 'officers of reasonable competence

could disagree on the legality of the defendant's actions." Id. at 91 (quoting Malley v.

Briggs, 475 U.S. 335, 341 (1986)); see also Lennon v. Miller, 66 F.3d 416, 421 (2d Cir.

1995) (holding that summary judgment on a qualified immunity defense is appropriate "if

the court determines that the only conclusion a rational jury could reach is that

reasonable officers would disagree about the legality of the defendants' conduct under

the circumstances"). "[Q]ualified immunity serves to protect police from liability and suit

when they are required to make on-the-spot judgments in tense circumstances." Id. at

424.

In this case, even if the court determines that the Defendants violated the

17

Plaintiff's clearly established constitutional rights, they are nevertheless entitled to qualified immunity because the Plaintiff has failed to offer sufficient evidence that the officers' actions were objectively unreasonable.  See Feathers v. Aey, 319 F.3d 843, 848 (6th Cir. 2003).

Based on the information available to the officers at the time of the search, it was objectively reasonable for them to believe that that a crime was in progress inside the Plaintiff's residence.  A motorist reported that a dartboard had flown from the vicinity of the Plaintiff's residence onto an adjacent street.  Report at 1.  When Officer D'Amato approached the Plaintiff's home he noticed that the rear sliding glass door was ajar and appeared to have been forcibly opened.  Id.  The totality of the circumstances suggests that the officers reasonably could have believed that a crime was in progress inside the dwelling or that the occupants of the dwelling were in danger.

Accordingly, the Defendants are entitled to qualified immunity because their conduct in entering the Plaintiff's residence and performing a search was objectively reasonable under the circumstances

LYNCH, TRAUB, KEEFE AND ERRANTE, P. C.  ATTORNEYS AT LAW

52 TRUMBULL STREET  P.O. BOX 1612  NEW HAVEN, CONNECTICUT 06506-1612

TELEPHONE (203) 787-0275  FACSIMILE (203) 782-0278

## IV.    CONCLUSION

For the foregoing reasons, the Defendants respectfully request that this Court grant their Motion for Summary Judgment as there are no genuine issues of material fact and therefore, they are entitled to judgment as a matter of law.

THE DEFENDANTS,
MICHAEL D'AMATO and
GARY DEPALMA

BY:_____
HUGH F. KEEFE, ESQ.
52 Trumbull Street
New Haven, CT 06510
(203) 787-0275
Federal Bar No. ct05106

19
LYNCH, TRAUB, KEEFE AND ERRANTE, P. C.   ATTORNEYS AT LAW

52 TRUMBULL STREET   P.O. BOX 1612   NEW HAVEN, CONNECTICUT 06506-1612

TELEPHONE (203) 787-0275   FACSIMILE (203) 782-0278

## CERTIFICATION

I hereby certify that a copy of the above was mailed on November 20, 2003 to all counsel and pro se parties of record as follows:

Norman Pattis, Esq.
Williams and Pattis, LLC
51 Elm Street
New Haven, CT 06510

_____
Hugh F. Keefe, Esq.

LYNCH, TRAUB, KEEFE AND ERRANTE, P. C.   ATTORNEYS AT LAW

52 TRUMBULL STREET  P.O. BOX 1612  NEW HAVEN, CONNECTICUT 06506-1612

TELEPHONE (203) 787-0275  FACSIMILE (203) 782-0278