IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

```
-------------------------------------------------------x
                                                       :
LINDA CARPENTINO                                       :     3:01 CV 1663(JGM)
                                                       :
v.                                                     :
                                                       :
MICHAEL D' AMATO &                                     :
GARY DEPALMA                                           :
-------------------------------------------------------x     DATE: MARCH 4, 2004
```

RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On August 29, 2001, plaintiff Linda Carpentino filed this lawsuit against defendants Michael D'Amato and Gary DePalma, alleging that while acting under color of state law as East Haven police officers, they knowingly conducted an unreasonable and warrantless search of plaintiff's home.  (Dkt. #1).  According to plaintiff, this search violated her rights secured by the Fourth Amendment of the United States Constitution and Sections 1983 and 1988 of Title 42 of the United States Code, and defendants committed the common law tort of intentional infliction of emotional distress.  (Id.).  Defendants filed their Answer, with three affirmative defenses, on September 21, 2001.  (Dkt. #6).  On March 21, 2003, the parties consented to trial before this Magistrate Judge. (Dkt. #27).

On November 21, 2003, defendants filed their Motion for Summary Judgment, brief in support,[1] and Local Rule 56(a)1 Statement of Material Facts. (Dkts. ##43-45).  Plaintiff filed her brief in opposition and Local Rule 56(a)2 Statement on December 29, 2003.[2] (Dkts.

---

[1]Attached are the following four exhibits: copy of case law (Exh. 1); copy of East Haven Police Department Case/Incident report, dated September 27, 2001(Exh. 2); copy of excerpts from deposition transcript of Linda Carpentino, taken on December 17, 2002 ["Plaintiff's Depo."](Exh. 3); and copy of excerpt from deposition transcript of Martin Carpentino, taken on April 24, 2003 ["Martin Carpentino's Depo."](Exh. 4).

[2]Attached are the following two exhibits: copy of East Haven Police Department Case/Incident report, dated September 7, 2000 ["9/7/00 Police Report"](Exh. A); and copy of excerpts from deposition transcript of Nicole Shea, taken on January 20, 2003 ["Shea's

##48-49.  See also Dkts. ##46-47).

For the reasons stated below, defendants' Motion for Summary Judgment (Dkt. #43) is granted.

## I.  FACTUAL SUMMARY

The factual summary is based on defendants' Local Rule 56(a)1 Statement of Facts ["Defendants' Statement"], plaintiff's Local Rule 56(a)2 Statement of Facts ["Plaintiff's Statement"] and documents cited therein and consequently does not represent factual findings of the Court.

In September 2000, plaintiff Linda Carpentino was the owner of a home located at 1192 North High Street in East Haven, Connecticut. (Defendants' Statement ¶ 1; Plaintiff's Statement ¶ 1).  On September 7, 2000, defendants Michael D'Amato and Gary DePalma were duly appointed officers of the police department of the Town of East Haven, Connecticut. (Defendants' Statement ¶ 2; Plaintiff's Statement ¶ 2).  Plaintiff is suing defendants D' Amato and DePalma in their individual capacities only. (Defendants' Statement ¶ 3; Plaintiff's Statement ¶ 3).

On the morning of September 7, 2000, defendant D' Amato received a report from a motorist that as she was driving south on North High Street, a dart board flew from the west side of North High Street and struck her vehicle. (Defendants' Statement ¶ 5; Plaintiff's Statement ¶ 5; 9/7/00 Police Report; Plaintiff's Depo. at 12).  The dart board came from a steep, private road with only four houses. (Defendants' Statement ¶ 6; Plaintiff's Statement ¶ 6; 9/7/00 Police Report; Plaintiff's Depo. at 12-13, 20).

Both parties agree that on the date of this incident, the rear sliding glass door of plaintiff's residence was left open; either the door was unlocked or it was ajar. (Defendants'

---

Depo."](Exh. B).

Statement ¶ 7; Plaintiff's Statement ¶ 7; 9/7/00 Police Report; Plaintiff's Depo. at 14 & 16; Martin Carpentino's Depo. at 17-18. See also Shea's Depo. at 12-13).

## II. DISCUSSION

The standard for summary judgment is well established. The Federal Rules of Civil Procedure state that a moving party is entitled to summary judgment as a matter of law if "there is no genuine issue as to any material fact." FED. R. CIV. P. 56(c). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(citation omitted). Factual disputes that are irrelevant or unnecessary will not be taken into consideration. Id. A disputed fact that will affect the outcome of the suit under the applicable law is a material fact. Id. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

In determining if a genuine factual dispute exists, the court must draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods, 530 U.S. 133, 150 (2000)(citation omitted). The court must not make determinations of credibility or weigh the evidence. Id. The court must look to the record as a whole when making its decision. Id. The nonmoving party cannot defeat a motion for summary judgment by simply showing that "there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must instead put "forth specific facts" showing that there is "a genuine issue for trial." Matsushita Elec. Indus. Co., 475 U.S. at 587, quoting FED. R. CIV. P. 56(e). The party moving for summary judgement can carry its burden by showing the "absence of any genuine issue of

fact." <u>Adickes</u>, 398 U.S. at 153.  This showing can be made by "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any." FED. R. CIV. P. 56(c).

Defendants seek summary judgment on the following grounds: (1) exigent circumstances justified defendants' warrantless search of plaintiff's home (Dkt. #44, at 5-13); (2) defendants' actions were not intended to inflict emotional distress and defendants did not engage in any extreme and outrageous conduct (<u>id.</u> at 13-16); and (3) defendants' entry into plaintiff's home was objectively reasonable, so that defendants' actions are protected by the doctrine of qualified immunity. (<u>Id.</u> at 16-18).

Plaintiff counters that defendants' "'evidence' produced here is insufficient to meet the exigent circumstances test" (Dkt. #48, at 5); the "paucity" of defendants' evidence defeats the qualified immunity argument (<u>id.</u>); and defendants' motion was not accompanied by affidavits of knowledgeable officers supplying their version of the relevant events or their explanations for their actions. (<u>Id.</u> at 6).

<u>A. EXIGENT CIRCUMSTANCES FOR WARRANTLESS SEARCHES</u>

Defendants contend that entry into plaintiff's home resulted from an investigation of a motorist's complaint that a dartboard had been thrown and struck the motorist's car. (Dkt. #49, 9/7/00 Police Report; Dkt. #44, Plaintiff's Depo. at 12).  Defendants entered plaintiff's home after interviewing neighbors of the plaintiff. (Dkt. #49, 9/7/00 Police Report). Defendants interviewed one neighbor who stated that he was not outside to witness the incident and a second neighbor "refused to give . . . her name." (<u>Id.</u>).  As a result of these interviews and the uncooperative demeanor of one of the neighbors, defendants believed a suspect might still be in the area. (<u>Id.</u>).

Defendants argue that "the totality of the circumstances in this case-suspicious

4

activity on a private road, individuals who refused to identify themselves, an open door, no response from residents inside the home after [defendants] announced themselves, and a house which appeared from the exterior to have been ransacked - presented exigent circumstances." (Dkt. #44, at 10-11).[3]  Plaintiff counters that defendants have failed to provide factual evidence that such exigent circumstances existed. (Dkt. #48, at 5).

When exigent circumstances are not present, a warrantless entry and search of a private residence is per se unreasonable under the Fourth Amendment.  Payton v. New York, 445 U.S. 573, 583, 586 n.25 (1980)(citation omitted); United States v. Karo, 468 U.S. 705, 714-15 (citation omitted), reh. denied, 468 U.S. 1250 (1984).  For a warrantless entry of a home to be valid, law enforcement agents must have probable cause and exigent circumstances must exist.  Kirk v. Louisiana, 536 U.S. 635, 638 (2002)(per curiam)(citation omitted).  Courts in this circuit have adopted factors set forth in Dorman v. United States, 435 F.2d 385, 392-93 (D.C. Cir. 1970)(en banc), to determine whether exigent circumstances justified the warrantless entry.  Accord United States v. MacDonald, 916 F.2d 766, 769-70 (2d Cir. 1990)(en banc), cert. denied, 498 U.S. 1119 (1991).  The Dorman factors are "intended not as an exhaustive canon, but as an illustrative sampling of the kinds of facts to be taken into account."  MacDonald, 916 F.2d at 770 (multiple citations omitted). The factors to be considered are:

> (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause . . . to believe that the suspect committed the crime; (4) [a] strong reason to believe that the suspect is in the premises being entered; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the peaceful circumstances of the entry.

---

[3] Plaintiff disputes that from the exterior, the house looked as though it had been ransacked.  (Compare Defendants' Statement ¶ 8 with Plaintiff's Statement ¶ 8).  The 9/7/00 Police Report does not mention the condition of plaintiff's home.

Id. at 769-70 (internal quotations & citations omitted).  The finding of exigent circumstances ultimately is a question of whether entry by law enforcement agents was premised on an "urgent need to render aid or take action." Id. at 769 (internal quotations & citations omitted)(emphasis added).

The statements of the neighbors do not indicate that any individual had been seen leaving or entering plaintiff's home. (Dkt. #49, 9/7/00 Police Report).  Additionally, the record is devoid of any indication that a crime of violence had occurred or that weapons were involved. (Id.).  The underlying crime being investigated was the damage to the motorist's car. (Id.).  The minor nature of the underlying offense and the lack of a reasonable belief of an armed suspect mitigates against a finding of exigent circumstances. Cf. MacDonald, 916 F.2d at 770 (finding exigent circumstances when, inter alia, a "grave offense" occurred and defendant was armed with loaded, semi-automatic weapons); see generally Loria v. Gorman, 306 F.3d 1271, 1285-86 (2d Cir. 2002).

Defendants based their entry on probable cause that a suspect was inside of plaintiff's home. See MacDonald, 916 F.2d at 770.  The court should look to the "totality of the circumstances" when making a probable cause determination. Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir. 2002)(citations omitted).  When considering the "totality of the circumstances," "courts must be aware that probable cause is a fluid concept–turning on the assessment of probabilities in particular factual contexts–not readily, or even usefully, reduced to a neat set of legal rules." Id. (internal quotations & citation omitted).

In this case, defendants were confronted with: (1) the report of a committed crime; (2) the fact that the reported crime originated from a location near plaintiff's home; (3) an uncooperative neighbor next to plaintiff's home; and (4) an unlocked back door at plaintiff's home. (Plaintiff's Depo. at 12-13 & 16; Dkt. #49, 9/7/00 Police Report).  The motorist

informed defendants that as she was driving along North High Street, her car was struck by "an object that came from a private road . . . [that] overlooks North High [Street]." (Dkt. #49, 9/7/00 Police Report). Plaintiff lives on North High Street. (Defendants' Statement ¶ 1; Plaintiff's Statement ¶ 1). After speaking with plaintiff's neighbors, defendants proceeded toward plaintiff's home where defendants found the rear door, according to plaintiff, unlocked and according to defendants, "open about four inches." (Dkt. #49, 9/7/00 Police Report; Plaintiff's Depo. at 14 & 16). Defendants entered this unlocked rear door, believing the suspect was located inside. (Dkt. #49, 9/7/00 Police Report). Although a belief that a suspect may be in the home is a factor that supports a finding of exigent circumstances, such belief is not dispositive. See Loria, 306 F.3d at 1284. Rather, it is the reasonableness of defendants' belief that is dispositive and in light of the circumstances, such belief was reasonable.

The existence of the unlocked door indicated a possible need to take action by defendants and the unlocked door led defendants to believe the home had been entered illegally. See Anthony v. City of New York, 339 F.3d 129, 135 (2d Cir. 2003)(essential question in exigent circumstances analysis is whether agents confronted with an urgent need to render aid or take action)(citations omitted). Plaintiff acknowledges that defendants entered the residence to investigate the motorist's complaint. (Dkt. #44, Plaintiff's Depo. at 13). Therefore, defendants entered the unlocked home under the belief that action needed to be taken to apprehended a suspect. (Dkt. #49, 9/7/00 Police Report). Furthermore, if defendants did not enter the home and left the scene, any potential suspects in the home may have escaped. See MacDonald, 916 F.2d at 769-70.

Defendants' entry required no use of force because the back door to plaintiff's home was, at minimum, unlocked. (Dkt. #44, Plaintiff's Depo. at 14 & 16). Additionally, when

defendants entered the premises, they "announced" themselves before proceeding to search the home. (Dkt. #49, 9/7/00 Police Report). The factual disagreement of the parties as to the rear sliding door is not dispositive in this matter. Whether the door was unlocked or slightly open does not affect the "peacefulness" of the officers' entry. See Loria, 306 F.3d at 1284. Thus, even accepting plaintiff's position that the door was closed but unlocked, the officers still did not forcibly enter the home.

### B. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff must prove the existence of four elements to sustain a claim for intentional infliction of emotional distress. The Connecticut Supreme Court has ruled that a plaintiff must establish:

> (1) that the [defendants] intended to inflict emotional distress or . . . knew or should have known that emotional distress was the likely result of [their] conduct; (2) that [their] conduct was extreme and outrageous; (3) that [their] conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.

Appleton v. Board of Educ. of the Town of Stonington, 254 Conn. 205, 210 (2000)(citation omitted). Additionally, the conduct of the defendants must be so "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Carrol v. Allstate Ins. Co., 262 Conn. 433, 443 (2003).

Plaintiff contends that the conduct of defendants was extreme and outrageous. (See Dkt. #44, Plaintiff's Depo. at 24). However, a search of the record does not support her contention. Moreover, assuming arguendo that defendants' entry was not justified by exigent circumstances, defendants' conduct still would not rise to the level of outrageousness needed to sustain plaintiff's burden. Moreover, plaintiff has failed to present any evidence showing that defendants' behavior was of the nature to be "utterly

intolerable in a civilized community." <u>Carrol</u>, 262 Conn. at 443.

Furthermore, plaintiff contends that defendants' actions have caused her severe emotional distress. (Dkt. #44, Plaintiff's Depo. at 24). As a result of defendants' actions, plaintiff testified that she must ensure that doors to her residency are locked, she requires her children to telephone her when they arrive home or at another location, and she suffers from a general distrust of people. (<u>Id.</u>). Plaintiff's assertions, however, do not rise to the appropriate level of emotional distress needed to support her claim. <u>See DeLaurentis v. New Haven</u>, 220 Conn. 225, 267 (1991)(mental distress must be of a "very serious kind")(citations omitted).[4]

### C. DOCTRINE OF QUALIFIED IMMUNITY

Defendants also claim qualified immunity in response to plaintiff's constitutional claims. (Dkt. #44, at 16-18). In light of the conclusions reached in Section II. A <u>supra</u>, there is no need to address this issue.

### III. CONCLUSION

For the reasons stated above, defendants' Motion for Summary Judgment (Dkt. #43) is <u>granted</u>.

Dated at New Haven, Connecticut, this 4th day of March, 2004.

_____/s/_____
Joan Glazer Margolis
United States Magistrate Judge

---

[4]Plaintiff's claim for emotional distress is also undercut by the fact that when she first encountered defendant D'Amato in the foyer entrance of her house, he asked her if he could go upstairs, to which she replied, "sure . . . go help yourself." (Dkt. #44, Plaintiff's Depo. at 13). She also volunteered to unlock her niece Jennifer's bedroom. (<u>Id.</u>).